**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **TRAVEL SYNDICATION** | § | |
| **TECHNOLOGY, LLC**, | § | |
| a Delaware Limited Liability Company | § | |
| | § | |
| Plaintiff/Counterclaim Defendant, | § | |
| | § | |
| v. | § | **C.A. No. 11-553-GMS** |
| | § | |
| **FUZEBOX, LLC,** | § | JURY TRIAL DEMANDED |
| a Georgia Limited Liability Company, and | § | |
| **DIGITAL COMMERCE, LLC**, | § | |
| a Georgia Limited Liability Company, | § | |
| | § | |
| Defendants/Counterclaim Plaintiffs. | § | |

## <u>AMENDED COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF</u>

COMES NOW, petitioner Travel Syndication Technology, LLC ("TST"), by and through its undersigned counsel, with this Amended Complaint for Injunctive and Other Relief against the Respondents, FuzeBox, LLC ("FuzeBox") and Digital Commerce, LLC ("Digital"), and respectfully states as follows:

### <u>PRELIMINARY STATEMENT</u>

1.       This dispute arises from a Professional Services Agreement, dated April 5, 2007 (attached as Exhibit A hereto), and subsequent related agreements, namely an Assignment of Professional Services Agreement, (attached as Exhibit B hereto), a Novation, dated October 1, 2008 (attached as Exhibit C hereto), and various Work Authorization Agreements (attached as Exhibit D hereto) (collectively the "Agreement").

2.      Pursuant to the Agreement, Respondents were required to develop certain computer programs and related intellectual property related to travel technology for Petitioner (the "Product").

3.      The Agreement provides that it may be terminated with or without cause upon thirty (30) days written notice.  (*See* Exhibit A, § 16.)  As a result of extensive cost overruns, delays and other issues, Petitioner sent FuzeBox a Notice of Termination on May 16, 2011 (attached as Exhibit E hereto) which took effect on June 16, 2011 (the "Termination Period"). The Agreement, however, requires Respondents to complete all work required by existing Work Authorization Agreements for the Product.  Indeed, Petitioner had already prepaid FuzeBox $689,000 for work to be performed during May 2011 and fully paid for work to be performed from June 1 to June 15, 2011.

4.      Subsequent to the Notice of Termination, Respondents took a number of drastic actions which are inconsistent with completion of its obligations under the Agreement and which placed Petitioner's Product and other intellectual property in jeopardy.  These actions included:  shutting down the current place of work and moving all activities to an alternate place of work;  suspending one of the primary employees coordinating the development of the Product;  disrupting the FuzeBox email communications for the project;  blocking communication between FuzeBox employees and Petitioner's employees;  blocking access to computer servers, including those owned by Petitioner, relating to the development of the Product; canceling meetings necessary to the continued development of the Product;  locking Petitioner's employees out of the code being developed for the Product; and asserting ownership rights over some or all of the intellectual property arising from the development of the Product. In addition, FuzeBox posted to its public website Petitioner's confidential and proprietary

ME1 11999107v.2

materials, in violation of its obligations under the Agreement, and there exists a risk Respondents will do so with other TST proprietary materials, intellectual property and/or the code of the Product itself.

5.    Petitioner has been seriously harmed by Respondents' actions to prevent the completion of the Product, their refusal to turn over current copies of the code of the Product to Petitioner, their refusal to allow Petitioner's employees access to hardware, including its own servers, and their prevention of communications and meetings between Petitioner's employees and Respondents' employees, and by any further actions by Respondents in contravention of their contractual obligations.   Respondents have breached their obligations under the Agreement, thereby depriving Petitioner of the benefit of its bargain.

6.    Furthermore, Petitioner will be irreparably harmed if Respondents do not comply with their obligations relating to Petitioner's intellectual property.  The Product is a unique development in travel software that is of substantial value, for which Petitioner has paid Respondents many millions of dollars to develop.   However, as the Product is still in development its exact value is not easily quantifiable.   Money damages cannot adequately compensate Petitioner for Respondents' breaches of the Agreement, particularly those actions in contravention of Petitioner's rights to its intellectual property and the Product.

7.    Petitioner sought to resolve these difference in an amicable manner without resort to litigation, but such efforts have been unsuccessful.   As a result, Petitioner TST has no alternative but to seek declaratory, injunctive and other equitable relief from this Honorable Court, as well as money damages and attorneys' fees as provided for in the Agreement.

ME1 11999107v.2

## I. PARTIES, JURISDICTION AND VENUE

8.      Petitioner TST is a Delaware Limited Liability Company, with its corporate headquarters and principal place of business in Wilmington, Delaware.

9.      Respondent FuzeBox is a Georgia Limited Liability Company, having a principal place of business at 659 Auburn Avenue, Suite 152, Atlanta, Georgia, 30312.  FuzeBox's registered agent is Lawrence B. Domenico, 5606 Glenridge Drive, Suite 900, Atlanta, Georgia, 30342.

10.     Respondent Digital is a Georgia Limited Liability Company, having a principal place of business at 659 Auburn Avenue, Suite 152, Atlanta, Georgia, 30312.  Digital's registered agent is Lawrence B. Domenico, 5606 Glenridge Drive, Suite 900, Atlanta, Georgia, 30342.

11.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as the parties are citizens of different States and the amount in controversy is in excess of $75,000, exclusive of interest and costs.  Jurisdiction and venue in this Court are also proper as Respondents have contractually consented to both jurisdiction and venue in the Delaware state and federal courts.  (*See* Exhibit A, § 22.)  Petitioner seeks injunctive and other equitable relief, as provided for in the Agreement.  (*See* Exhibit A, § 20.)

## II. FACTUAL BACKGROUND

### A. THE AGREEMENT

12.     On or about April 9, 2007, Respondent Digital and certain American Automobile Association and Canadian Automobile Association affiliate clubs (collectively the "Auto Clubs") entered into a Professional Services Agreement.  (*See* Exhibit A.)

13.     Pursuant to the Professional Services Agreement, Digital would provide services, to be more fully detailed in subsequent Work Authorization Agreements, relating to the development of the software Product, which relates to a new innovation in travel services and as a result is of significant value.

14.     The Agreement provides that it will be governed by Delaware law and provides that the parties consent to personal jurisdiction and venue in the Delaware courts, including this Honorable Court.  (Exhibit A, § 22.)

15.     The Agreement further provides that "[i]n the event of any litigation arising out of or relating to this Agreement or the breach, termination, validity, or enforcement of this Agreement, the prevailing Party shall be entitled to recover all costs and reasonable attorneys' and paralegals' fees incurred in any investigation, trails [sic], bankruptcies, appeals and collection efforts."  (Exhibit A, § 22.)

16.     The Agreement provides that it "may be terminated at any time by either Party, with or without cause (including for no cause), upon thirty (30) days written notice to the other Party; provided that:  (1) such termination shall not affect any Work Authorization Agreement or Change Order which is outstanding and has not been fully performed…, and (ii) the provisions contained in Sections 11 through 25 (inclusive) of this Agreement shall survive the termination of this Agreement, regardless of who causes the termination and under what circumstances."  (*See* Exhibit A, § 16.)

17.     As the parties agreed, the value of the Product, and any damages arising from a breach of certain sections of the Agreement, would be difficult to assess.  Accordingly, the parties contracted that a breach of certain of the provisions of the Agreement -- specifically Sections 7 to 13, which include those governing ownership of intellectual property, use of

confidential information, and the work of each party's project managers and personnel -- would entitle the other party to seek injunctive relief and consented to the jurisdiction of a court of equity for "any action seeking to enjoin immediately any breach of such provisions."  (Exhibit A, § 20.)

18.     The Agreement is extremely clear that Petitioner owns all intellectual property developed as a result of the Agreement, and the work performed thereunder.  Section 7 of the Agreement provides in part:  "Consultant agrees that all materials created as a result of this Agreement, including all software, programming, interfaces, advertisements, direct mail pieces, designs, plans, reports, specifications, drawings, schematics, prototypes, models, inventions, and all other information made during the course of this Agreement and arising from the services provided under any Work Authorization Agreement (hereinafter referred to as 'Intellectual Property') shall be and remain the exclusive property of Customer.  This includes, without limitation, all originals and negatives of all plans, drawings, photographs, charts, programs, applications, software, algorithms, models and other documents or materials created by Consultant hereunder.  Customer shall have the right to publish, transfer, sell, license, and use the Intellectual Property without payment of any additional compensation to Consultant."  (*See* Exhibit A, § 7.)  The parties specifically agreed that a violation of this provision would entitle the other party to seek injunctive relief "to enjoin immediately any breach of such provision[]." (Exhibit A, § 20.)

19.     The Agreement requires the parties to take particular care regarding proprietary or confidential information.  Section 8 provides in part:  "Neither Consultant nor Customer shall, either during the term of this Agreement or at any time thereafter, disclose or make available any Confidential Information of the other Party to any person or entity, nor shall either make or

6

cause to be made, either on its own behalf, or on behalf of others, any use of any such Confidential Information other than in connection with the Project.  For purposes hereof, the term 'Confidential Information' means Consultant's and the Customer's respective proprietary information, records, technical data, trade secrets or know-how, including but not limited to customer or prospect lists, research, plans, products, services, markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, advertising and marketing campaigns, finances or other business information disclosed by one Party to the other Party either directly or indirectly, except that this shall not include intellectual property which become the property of Customer pursuant to section 7, above."  (*See* Exhibit A, § 8.)  The parties specifically agreed that a violation of this provision would entitle the other party to seek injunctive relief "to enjoin immediately any breach of such provision[]."  (Exhibit A, § 20.)

20.     The Agreement recognizes that the parties may each assign a Project Manager and other personnel for managing the implementation of the Project.  As provided by Section 9 of the Agreement, "[t]he Project Managers shall be responsible for:  (i) managing the day-to-day activities under this Agreement, (ii) serving as liaisons between the Parties, (iii) assigning and scheduling the appropriate personnel to perform all of the required services under this agreement, and (iv) authorizing and executing any and all Work Authorization Agreement and Change Orders."  Respondents specifically recognized the necessity of Petitioner's Project Manager being able to perform those duties and responsibilities to the performance of the Agreement.  (*See* Exhibit A, § 9.)  The parties specifically agreed that a violation of this provision would entitle the other party to seek injunctive relief "to enjoin immediately any breach of such provision[]."  (Exhibit A, § 20.)

21.     In 2007, Digital and the Auto Clubs agreed to an Assignment of Professional Services Agreement, whereby FuzeBox "accept[ed] assignment of all of [Digital's] duties and obligations of performance under the Agreement.  [FuseBox] agree[d] to assume and perform all such duties and obligations [of Digital]."  (*See* Exhibit B, § 1.)  This assignment by its express terms did not release Digital "from any of its obligations under the Agreement."  (*See* Exhibit B, § 3.)

22.     In October of 2008, the parties agreed to a Novation which substituted TST for the Auto Clubs "in all of the agreements and understandings set forth in the [Agreement] and to completely release the [Auto] Clubs from their obligations under those agreements and understandings."  (*See* Exhibit C.)

23.     Both prior and subsequent to the Novation, a series of Work Authorization Agreements were entered into addressing specific aspects of the development of the Product.  (*See* Exhibit D.)  By the Agreement's terms, these Work Authorization Agreements were incorporated into the Agreement.  (*See* Exhibit A, § 1.)

24.     The Agreement provides that it may be terminated with or without cause upon thirty (30) days written notice.  After a termination notice, however, the Agreement requires Respondents to complete all work required by outstanding Work Authorization Agreements for the Product through the end of the Termination Period.  (*See* Exhibit A, § 16.)

### B. RESPONDENT INCURS SUBSTANTIAL DELAYS AND COST OVERRUNS

25.     At the outset of the parties relationship, Digital estimated that a completed Product would cost $4.5 million and would be completed by March 31, 2010.  Digital, and later FuzeBox, continually missed deadlines and incurred expenses well in excess of that estimate.

26.     By the date of the original completion deadline, the project was already more than $1.5 million over budget and was not yet complete.  Through April 15, 2011, the development of the Product was more than $9.5 million over budget.

27.     By mid-2010, Respondents had not completed the Product, the completion deadline had already been missed, and the development of the Product was millions of dollars over budget.  TST, however, continued to work with Respondents to seek to complete the Product in a commercially viable manner and set another completion deadline of November 30, 2010.

28.     Respondents failed yet again to meet the revised November 30, 2010 completion deadline.  TST nevertheless continued to work with Respondents to seek to complete the Product and entered into additional specific Work Authorization Agreements to accomplish that goal.

29.     Respondents failed to meet the November 30, 2010 deadline.

**C.  PETITIONER FILES ITS NOTICE OF TERMINATION OF THE AGREEMENT**

30.     By mid-May, 2011, after continual cost overruns, delays and other issues, the Product remained incomplete and TST had no alternative but to terminate the Agreement. Accordingly, on May 16, 2011, Petitioner sent FuzeBox a Notice of Termination which took effect on June 16, 2011.  (*See* Exhibit E hereto.)

31.     Pursuant to the Agreement, and consistent with the Notice of Termination, Respondents were required to complete the existing work authorized by the outstanding Work Authorization Agreements (*see* Exhibit D) and turn over the then existing Product to TST.  (*See* Exhibit A, § 16.)

32.     Petitioner prepaid FuzeBox $689,000 for work to be performed during May 2011 and fully paid for work to be performed during June 1 to June 15, 2011.  Respondents, however, failed to perform such work as required by the Agreement.

### D.  RESPONDENTS' CONDUCT SUBSEQUENT TO THE NOTICE OF TERMINATION

33.     Following Petitioner's Notice of Termination, Respondents halted outright or substantially impeded the completion of the work required by outstanding Work Authorization Agreements and took a number of actions which are in violation of Respondents' contractual obligations and which place TST's intellectual property, proprietary and confidential information, and the Product itself at risk.

34.     These actions began on or about May 19, 2011 and include:  shutting down the current place of work and moving all activities to an alternate FuzeBox office; suspending one of the primary employees coordinating the development of the Product, which substantially hampered further progress on the Product during the Termination Period; disrupting the FuzeBox email communications for the project; blocking communication between Respondents' employees and Petitioner's project manager, personnel and agents; blocking access to computer servers, including those owned by Petitioner, relating to the development of the Product; canceling meetings necessary to the continued development of the Product; ordering FuzeBox employees not to communicate in any manner with Petitioner's project manager, personnel and agents, including communications necessary for the continued development of the Product; locking Petitioner's project manager, personnel and agents out of the code being developed for the Product; and asserting ownership rights over some or all of the intellectual property arising from the development of the Product.  In addition, FuzeBox posted to its public website Petitioner's confidential and proprietary materials, in violation of its obligations under the

Agreement.  These materials were removed from Respondents' website only after multiple demands by Petitioner, and there exists a risk Respondents will post to the internet or otherwise disseminate other TST proprietary materials, intellectual property and/or the code of the Product itself.

35.     FuzeBox, through a letter from its counsel, asserts ownership of intellectual property which the Agreement clearly provides to Petitioner.

36.     Petitioner believes, particularly in light of FuzeBox's assertion of ownership of materials that are clearly owned by Petitioner, that there exists a risk Respondents will take actions detrimental to Petitioner's other intellectual property, confidential and/or proprietary materials and/or the code of the Product itself.  Furthermore, there exists a risk that Respondents have retained copies of some or all of the code of the Product.  Given FuzeBox's improper assertion of ownership over Petitioner's intellectual property, Petitioner is concerned that any action by FuzeBox to either attempt to sell such intellectual property, confidential and/or proprietary materials and/or the code of the Product, or to publicly disclose such information in a manner which would destroy its value, would irreparably harm Petitioner.  The harm from either public dissemination of such confidential and proprietary materials, intellectual property, or the code of the Product, or dissemination or sale of the same to a competitor, cannot be measured but would be extremely harmful to Petitioner.

37.     At least some of the builds of code of the Product during the Termination Period were corrupted, thus rendering pieces of the Product in these recent builds non-functional.

38.     Petitioner has been seriously harmed by Respondents' actions to prevent the completion of the Product, their publication or dissemination of proprietary TST materials, and by further actions by Respondents in contravention of their contractual obligations.

39.     Petitioner will be seriously and irreparably harmed if Respondents fail to turn over all copies of the Product to Petitioner; if Respondents retain for their own benefit or sell the Product or any of the code constituting parts thereof; or if Respondents publish or disseminate any additional proprietary TST materials.   Money damages cannot adequately compensate Petitioner for these harms.

**E.   RESPONDENTS REFUSE TO ADDRESS PETITIONER'S CONCERNS AND CONTINUE TO IMPEDE DEVELOPMENT OF THE PRODUCT**

40.     Following the Notice of Termination on May 16, 2011, TST attempted to discuss with Respondents on multiple occasions a manner in which to amicably resolve the relationship between the parties.  Unfortunately, those efforts were not successful.

41.     On May 19, 2011, Respondents received from Mr. Richard Keck, Esq., counsel for Respondents, a highly inflammatory and inaccurate letter demanding, amongst other things, a "break-up fee" contemplated nowhere in the Agreement.  (*See* Letter from Mr. Richard Keck, Esq. to Mr. Bernhard M. Koch, dated May 19, 2011, attached as Exhibit F hereto.)  Despite having been sent by email to Petitioner at 5:16 p.m. on May 19, 2011, Mr. Keck's letter demanded a response from TST by noon on May 20, 2011.  (*See* Exhibit F at 4.)

42.     Petitioner responded to Respondents letter at 11:16 a.m. on May 20, 2011, rejecting Respondents inflammatory and false accusations.  In addition, Petitioner requested written assurance by close of business that Respondents would (1) perform the development activities required by the existing Work Authorization Agreement without interruption; (2) preserve, safeguard and provide to Petitioner on a regular basis the development Product and related intellectual property owned by Petitioner pursuant to the Agreement; (3) allow Petitioner's personnel access to the place of work, servers and other hardware necessary to perform their job functions; and (4) remove from the www.fuzeboxinc.com website confidential

and proprietary TST materials.  Petitioner reserved all rights to take necessary legal action to protect its interests.  (*See* Letter from F. Traynor Beck, Esq. to Richard Keck, Esq. dated May 20, 2011, attached as Exhibit G hereto.)

43.     Respondents failed to respond by close of business on May 20, 2011 and their response, when received at 2:20 p.m. on May 21, 2011, not only asserted yet more baseless accusations against Petitioner, including that Petitioner's Notice of Termination was a "wrongful repudiation of the Existing Contract," but also failed to provide the assurances requested by Petitioner relative to preserving, safeguarding, and providing to Petitioner its intellectual property and the Product and the removal of Petitioner's proprietary video on the Fuzeboxinc.com website.  (*See* Letter from Richard Keck, Esq. to F. Traynor Beck, Esq. dated May 21, 2011, attached as Exhibit H hereto.)

44.     In the May 21, 2011 letter, Respondents' counsel continued to assert its right to "intellectual property" which is clearly inconsistent with the Agreement.  (*Compare* Exhibit H with Exhibit A, §7.)  Respondents' assertion of rights to intellectual property from the Product only highlights the risk that Respondents may take some action with respect to Petitioner's intellectual property that is in breach of the Agreement and which will damage Petitioner in a manner which cannot be remedied by money damages.

45.     Petitioner nevertheless sought again to reach an amicable wind up of the parties contractual relationship and entered into discussions with Respondents to reach that goal.  Those efforts were unsuccessful.

46.     As a result, Petitioner TST had no choice but to seek monetary, declaratory and injunctive relief from this Honorable Court to protect its Product and related intellectual property.

## COUNT I -- PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

47.     Petitioner hereby adopts and incorporates by reference the allegations set forth above in Paragraphs 1 through 46, inclusive, as and for this Paragraph 47 as if those allegations were specifically alleged herein.

48.     Petitioner is likely to succeed on the merits of its claims against Respondents.

49.     Petitioner faces a threat of immediate and irreparable injury if Respondents are not enjoined from breaching the Agreement, particularly relating to the preservation of the Product and all other intellectual property owned by Petitioner and the prompt handover of such material to Petitioner.   Respondents have contractually agreed that injunctive relief is appropriate for these breaches of the Agreement.  (*See* Exhibit A, §§ 7, 20.)

50.     Injunctive relief is also proper for Respondents breaches of its obligations related to Petitioner's confidential materials, intellectual property and the Product.  (*See* Exhibit A, §§ 8, 9, 20.)  The risk of immediate and irreparable injury resulting from Respondents' breaches of their obligations regarding the Product and intellectual property are demonstrated by Respondents' assertion of rights to intellectual property clearly granted to Petitioner, by Respondents efforts to impede or prevent Petitioner's project manager and other personnel from winding up the Product, and by the corruption of recent builds of the code of the Product.

51.     The balancing of the equities in this case tips decidedly in favor of awarding to Petitioner the injunction that it seeks.  Petitioner simply seeks to ensure that the Product, other intellectual property, and confidential and proprietary materials owned by Petitioner are preserved and protected in the manner contemplated by the Agreement and all intellectual property, confidential and proprietary materials, and all copies of the Product are turned over to Petitioner so that the Product may be effectively completed following Termination.

52. Conversely, the harm to Petitioner in not enjoining Respondents from breaching their obligations under the Agreement is substantial, because: (a) Respondents have previously publicly disseminated Petitioner's proprietary and confidential material; (b) Respondents have impeded Petitioner's employees and agents from performing their jobs during the Termination Period; (c) Respondents have actively prevented work from continuing on the Product during the Termination Period; and (d) Respondents have asserted rights to intellectual property that is clearly granted to Petitioner under the Agreement.

53. Petitioner has no adequate remedy at law.

WHEREFORE, for all of the reasons set forth above, Petitioner TST respectfully requests that this Honorable Court:

A. Preliminarily and permanently enjoin Respondents FuzeBox and Digital from taking any act which would harm the Product or the value of the Product, including but not limited to public disclosure or sale to a third party, and ordering Respondents to preserve, safeguard and provide to TST the current version of the Product and all additional code developed during the Termination Period;

B. Preliminarily and permanently enjoin Respondents FuzeBox and Digital from taking any act which would harm Petitioner's intellectual property or the value of such intellectual property, including but not limited to public disclosure or sale to a third party and ordering Respondents FuzeBox and Digital to preserve, safeguard and provide to TST intellectual property owned by TST pursuant to the Agreement; and

C. Preliminarily and permanently enjoin Respondents FuzeBox and Digital from disclosing or publicizing any of Petitioner's proprietary or confidential materials.

## COUNT II -- BREACH OF CONTRACT

54. Petitioner hereby adopts and incorporates by reference the allegations set forth above in Paragraphs 1 through 53, inclusive, as and for this Paragraph 54 as if those allegations were specifically alleged herein.

55. The Agreement is a valid and enforceable contract between Petitioner and Respondents.

ME1 11999107v.2

56.     Petitioner has performed all material obligations required of it under the Agreement.

57.     Respondents have breached the Agreement by posting Petitioner's proprietary and confidential materials to Respondents' publicly accessible website.

58.     Respondents have further breached the Agreement by preventing Petitioner's Project Manager and other personnel from accessing the servers upon which the Product is staged, including those servers owned by Petitioner.

59.     Respondents have further breached the Agreement by preventing Petitioner's Project Manager and other personnel from participating in meetings, communicating with Respondents' employees and agents and performing other tasks necessary for them to complete their work relative to the Product during the Termination Period.

60.     Respondents have further breached the Agreement by failing to perform the work required by the outstanding Work Authorization Agreements and impeding the progress of such work on the Product during the Termination Period.

61.     Respondents have further breached the Agreement by providing corrupted code for certain pieces of the Product in recent builds of the code.

62.     As a direct and proximate result of Respondents breaches of the Agreement, Petitioner has been damaged.

63.     As set forth in the Agreement, if Petitioner prevails in its claims, Respondents must pay for "all costs and reasonable attorneys' and paralegals' fees incurred" by Petitioner in connection with this action.  (*See* Exhibit A, § 22.)

        WHEREFORE, for all of the reasons set forth above, Petitioner TST respectfully requests that this Honorable Court:

A. Award damages in TST's favor and against the Respondents FuzeBox and Digital, in an amount to be proven at trial;

B. Award to TST its costs and reasonable attorneys' and paralegals' fees incurred in connection with the enforcement of the Agreement; and

C. Award to TST any such other and further relief as the Court deems equitable and just.

## COUNT III -- CONSTRUCTIVE TRUST

64.    Petitioner hereby adopts and incorporates by reference the allegations set forth above in Paragraphs 1 through 63, inclusive, as and for this Paragraph 64 as if those allegations were specifically alleged herein.

65.    Respondents' assertion of ownership over intellectual property arising from the development of the Product is a direct violation of the Agreement, which provides that "all materials created as a result of this Agreement including all software, programming, interfaces, advertisements, direct mail pieces, designs, plans, reports, specifications, drawings, schematics, prototypes, models, inventions, and all other information made during the course of this Agreement and arising from the services provided under any Work Authorization Agreement (hereinafter referred to as "Intellectual Property") shall be and remain the exclusive property of [Petitioner]." (Exhibit A, § 7.)

66.    Respondents should not be permitted to profit from their attempt to misappropriate TST's intellectual property in violation of the Agreement.

67.    Given Respondents' counsel's assertion of rights to the intellectual property arising from the Agreement in its May 19, 2011 and May 21, 2011 letters, and Respondents public posting on the Fuzeboxinc.com website of Petitioner's proprietary and confidential materials, there exists a substantial risk that Respondents will attempt to impermissibly profit from the Product, TST's intellectual property or other proprietary and confidential materials,

and/or seek to harm the value of those materials to TST in an amount that cannot be measured.

68.    While the amount of damages are not readily ascertainable in this case, and could never account for the full measure of damages suffered by TST, equity nonetheless mandates that a constructive trust be imposed over any intellectual property developed under the Agreement and all other of TST's proprietary or confidential materials currently held by Respondents, to ensure the preservation and safe turn over to TST at or before the end of the Termination Period, and over any profits or revenues generated by Respondents arising from any of TST's intellectual property or other confidential or proprietary materials.

WHEREFORE, for all of the reasons set forth above, Petitioner TST respectfully requests that this Honorable Court:

A.    Impose a constructive trust over any and all of TST's intellectual property and other confidential or proprietary materials that is currently held by Respondents, and all profits and revenues generated by Respondents arising from such intellectual property and other confidential or proprietary materials, and hold those proceeds for the benefit of TST; and

B.    Award to TST all other relief as the Court deems equitable and just, including, but not limited to, its actual costs and attorneys' and paralegals' fees incurred in this matter.

## COUNT IV -- CONVERSION

69.    Petitioner hereby adopts and incorporates by reference the allegations set forth above in Paragraphs 1 through 68, inclusive, as and for this Paragraph 69 as if those allegations were specifically alleged herein.

70.    Certain physical assets, particularly including certain computer servers, as well as intellectual property related to the Product, belong to Petitioner.

71.    Respondents have prevented Petitioner from accessing certain of such physical assets, particularly including certain computer servers, thereby wrongfully exercising ownership over such assets.

72.     Respondents have asserted ownership over intellectual property which is clearly granted to Petitioner by the Agreement.

73.     Respondents' exercise of the right of ownership of the physical assets, particularly including certain computer servers, and assertion of ownership of intellectual property related to the Product was not authorized by Petitioner.

74.     As a result of Respondents' conversion, Petitioner has suffered and will continue to suffer damages.

WHEREFORE, for all of the reasons set forth above, Petitioner TST respectfully requests that this Honorable Court:

A.  Order Respondents to immediately turn over to TST all such physical assets and intellectual property;

B.  Award damages in TST's favor and against the Respondents FuzeBox and Digital, in an amount to be proven at trial;

C.  Award to TST any such other and further relief as the Court deems equitable and just, including Petitioner's costs and reasonable attorneys' and paralegals' fees.

## COUNT V -- DECLARATORY JUDGMENT

75.     Petitioner hereby adopts and incorporates by reference the allegations set forth above in Paragraphs 1 through 74, inclusive, as and for this Paragraph 75 as if those allegations were specifically alleged herein.

76.     Petitioner properly terminated the Agreement in accordance with its terms by submitting a thirty (30) day Notice of Termination on May 16, 2011, which would become effective on June 16, 2011.  (*See* Exhibit A, § 16; Exhibit E.)

77.     Both prior to and subsequent to the Notice of Termination, Respondents have materially breached numerous provisions of the Agreement.

ME1 11999107v.2

78.     Respondents have impeded development of the Product during the Termination Period in breach of the Agreement.

79.     Respondents have prevented Petitioner's Project Manager and other personnel from performing their job functions necessary to the development of the Product through the Termination Period in breach of the Agreement.  (*See* Exhibit A, § 9.)

80.     Respondents have asserted ownership over intellectual property related to the Product, that is granted to Petitioner by the Agreement, in breach of the Agreement.  (*See* Exhibit A, § 7.)

81.     Respondents have published to Respondents' publicly accessible website, fuzeboxinc.com, Petitioner's proprietary and confidential information in breach of the Agreement.  (*See* Exhibit A, § 8.)

WHEREFORE, for all of the reasons set forth above, Petitioner TST respectfully requests that this Honorable Court:

A.   Issue a declaratory judgment that the Product and all related intellectual property are owned by TST pursuant to the clear terms of the Agreement;

A.   Issue a declaratory judgment finding Respondents in material breach of the Agreement;

B.   Issue a declaratory judgment providing that, as a result of Respondents material breaches of the agreement, Respondents are prevented from enforcing any terms of the Agreement against TST, including those that explicitly survive termination of the Agreement;

C.   Award to TST its reasonable costs and attorneys' and paralegals' fees incurred in connection with this lawsuit; and

C.   Award to TST any such other and further relief as the Court deems equitable and just.

## COUNT VI -- BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

82.     Petitioner hereby adopts and incorporates by reference the allegations set forth above in Paragraphs 1 through 81, inclusive, as and for this Paragraph 82 as if those allegations were specifically alleged herein.

83.     There is implied in the Agreement a covenant of good faith and fair dealing whereby Respondents agreed that they would perform their obligations in good faith and in the exercise of fair dealing.

84.     As alleged herein, Respondents have breached the covenant of good faith and fair dealing by acting to evade the letter and spirit of the bargain between the parties.

85.     Petitioner has performed all its duties, obligations, conditions and covenants under the Agreement, except for those promises, performances, duties and obligations which have been excused by Respondents breaches.

86.     As a direct and proximate result of Respondents' breach of covenant of good faith and fair dealing, Petitioner has suffered damages, the exact amount to be proven at trial.

        WHEREFORE, for all of the reasons set forth above, Petitioner TST respectfully requests that this Honorable Court:

A.     Award damages in Petitioner's favor and against the Respondents FuzeBox and Digital, in an amount to be proven at trial;

B.     Award to Petitioner of its costs and reasonable attorneys' and paralegals' fees incurred in connection with the enforcement of the Agreement; and

C.     Award to Petitioner any such other and further relief as the Court deems equitable and just.

ME1 11999107v.2

Dated:      July 19, 2011                          Respectfully submitted,

                                                   MCCARTER & ENGLISH, LLP


                                          By:      /s/ Jameson A. L. Tweedie
                                                   A. Richard Winchester (ID 2641)
                                                   Daniel J. Brown (ID 4688)
                                                   Jameson A. L. Tweedie (ID 4927)
                                                   jtweedie@mccarter.com
                                                   Renaissance Centre
                                                   405 N. King Street, 8th Floor
                                                   Wilmington, DE 19801
                                                   (302) 984-6300 (phone)
                                                   (302) 984-6399 (fax)