# EXHIBIT A

Exhibit A

# PROFESSIONAL SERVICES AGREEMENT

**THIS PROFESSIONAL SERVICES AGREEMENT** (this "**Agreement**") is by and among Digital Commerce, LLC ("**Consultant**"), and AAA Mid-Atlantic Inc., Alberta Motor Association Travel Agency, Ltd., CAA Travel (South Central Ontario) Inc., and Ohio Auto Club (these four motor clubs jointly referred to herein as the "**Customer**"). Consultant and Customer are referred to herein as the "**Parties**".

WHEREAS, the Customer desires to engage the services of the Consultant in accordance with the terms and conditions set forth herein; and

WHEREAS, Consultant desires to be engaged by the Customer in accordance with the terms and conditions set forth herein:

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements contained herein, the Parties agree as follows:

    1. **Engagement**. The Customer hereby engages the Consultant and Consultant hereby accepts such engagement, to provide Customer with services as described in Work Authorization Agreements to be negotiated and entered into by both Parties from time-to-time, an incomplete form of which is attached hereto as **Exhibit A** (each completed form signed by the Parties is referred to herein as a "Work Authorization Agreement"). Any such completed and signed Work Authorization Agreement shall be deemed an addendum of and part of this Agreement and the services to be rendered pursuant to such Work Authorization Agreement shall be governed by the terms of this Agreement. In the event of a conflict between the terms of this Agreement and the Work Authorization Agreement, the terms of this Agreement shall govern unless the particular provision of this Agreement which the Parties intend to modify is specifically identified as being modified in the Work Authorization Agreement and such Work Authorization Agreement is signed by a duly authorized officer of Consultant and by a duly authorized officer of the Customer. Each Work Authorization Agreement shall include the following:

        Specific Consulting Projects, including tasks (the "Project")
        Consulting Rate or Price of the Project (the "Price")
        Additional Services
        Location of the Project (the "Location")
        Travel and related expenses to be reimbursed (the "Expenses")
        Time period and special terms
        Project Managers

Consultant shall be responsible for delivering and performing only those items and professional services specifically included in the Work Authorization Agreement. Any modification to a Work Authorization Agreement shall be pursuant to the Change Order

1

process set forth below. The Parties acknowledge and agree that any timetables set forth in a Work Authorization Agreement or Change Order are good faith estimates only, and actual completion of the services contemplated in a Work Authorization Agreement or Change Order may be delayed as a result of unavailability of Customer's personnel, changes by Customer to the Project's characteristic, incompatibility between software or equipment systems or other Customer systems or facilities, delay created by third party vendors or content providers (other than direct subcontractors of Consultant). Subject to the foregoing, the Parties agree to use commercially reasonable efforts to meet the timetables set forth in Work Authorization Agreements and/or in any Change Orders applicable to such Work Authorization Agreements.

2. **Acceptance of Phases of Projects**. In the event that the Project is divided into distinct phases, components or stages as described in a Work Authorization Agreement, the Customer shall execute a written approval upon completion of each such phase, component or stage of the Project. Consultant shall rely on such written approval as the Customer's acceptance of such services or items delivered. Any modifications to the services or items delivers after execution of the written approval by the Customer shall be subject to the Change Order process set forth below.

3. **Change Orders**. In the event that the Consultant or the Customer desire to make any modifications to a Project, Consultant and the Customer shall negotiate in good faith a Change Order. Any such complete and signed Change Order shall be deemed an addendum of and part of this Agreement and the Work Authorization Agreement to which the Change Order relates, and the services to be rendered pursuant to such Change Order shall be governed by the terms and conditions of this Agreement. In the event of a conflict between the terms of this Agreement and the Work Authorization Agreement, the terms of this Agreement shall govern unless the particular provision of this Agreement which the Parties intend to modify is specifically identified as being modified in the Work Authorization Agreement and such Work Authorization Agreement is signed by a duly authorized officer of Consultant and by a duly authorized officer of the Customer.

4. **Place of Work**. Consultant shall render services primarily at the Location or Locations listed in the Work Authorization Agreement.

5. **Time.** Consultant's schedule for services performed pursuant to this agreement shall be set forth in the applicable Work Authorization Agreement.

6. **Payment**. The Customer shall pay to the Consultant the Price indicated in each Work Authorization Agreement (as modified by any Change Order) for services performed pursuant to the Work Authorization Agreement. With respect to each Project, all payments are due and shall be made within thirty (30) business days of the receipt of each invoice. In addition to payment of the Price, the Customer shall reimburse Consultant in full for all Expenses related to each Project with thirty (30) business days of the date of each invoice. All fees are in US dollars and are exclusive of all taxes, including without limitation, sales, use, value added or other taxes or levies on the transaction made under this Agreement.

7. Ownership of **Intellectual Property.** Consultant agrees that all materials created as a result of this Agreement including all software, programming, interfaces, advertisements, direct mail pieces, designs, plans, reports, specifications, drawings, schematics, prototypes, models, inventions, and all other information made during the course of this Agreement and arising from the services provided under any Work Authorization Agreement (hereinafter referred to as "Intellectual Property") shall be and remain the exclusive property of Customer. This includes, without limitation, all originals and negatives of all plans, drawings, photographs, charts, programs, applications, software, algorithms, models and other documents or materials created by Consultant hereunder. Customer shall have the right to publish, transfer, sell, license, and use the Intellectual Property without payment of any additional compensation to Consultant. Consultant agrees that any copyrightable or patentable materials or inventions developed by Consultant hereunder shall be deemed to have been developed by Consultant as an employee or "for hire" as defined by U.S. Patent or Copyright Law, so that all copyright or patent rights in Intellectual Property and associated materials belong exclusively to Customer. To the extent that any such Intellectual Property or parts thereof may not be deemed "works made for hire" or employee work product by operation of law, then Consultant hereby conveys and assigns all rights, title, and interest in the ownership of any copyright or patent in Intellectual Property to Customer, and said copyright or patent shall vest in Customer immediately upon creation. Such assignment includes all moral rights that Consultant may have with respect to the Intellectual Property; and to the extent such moral rights are not assignable, they are hereby expressly waived. Consultant agrees to give Customer all assistance reasonably required to perfect such rights. Any other materials owned or to be procured by Consultant to be delivered or furnished to Customer hereunder, which are not created specifically by Consultant for Customer, will be licensed or otherwise conveyed to Customer to the extent necessary for the intended use. Notwithstanding any other provision of this Agreement or of any subsequent Work Authorization Agreement and related Change Orders, if any, the provisions of this section shall apply to all services and resulting Intellectual Property developed or provided by Consultant pursuant to this Agreement or any subsequent Work Authorization Agreement unless a subsequent Work Authorization Agreement specifically states that the parties agree that it supersedes the rights of Customer set forth in this section.

8. **Confidential Information.** Neither Consultant nor Customer shall, either during the term of this Agreement or at any time thereafter, disclose or make available any Confidential Information of the other Party to any person or entity, nor shall either make or cause to be made, either on its own behalf, or on behalf of others, any use of any such Confidential Information other than in connection with the Project. For purposes hereof, the term "Confidential Information" means Consultant's and the Customer's respective proprietary information, records, technical data, trade secrets or know-how, including, but not limited to customer or prospect lists, research, plans, products, services, markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, advertising and marketing campaigns, finances or other business information disclosed by one Party to the other Party either directly or indirectly, except that this shall not include Intellectual

Property which become the property of Customer pursuant to section 7, above. In addition, Confidential Information includes information relating to past, present, future or prospective members, insureds and customers (including without limitation names, addresses, and telephone numbers); business plans and strategies; organization and operations; sales, marketing, financial, insurance, membership and other practices, processes, methods, data, and results; product and service costs, prices and rates of Customer or of any AAA club. Confidential Information includes information obtained directly or indirectly from AAA club members, insureds or customers. Such information may be communicated by any means and may be contained in any existing or future media. Confidential Information does not include information which: (i) is known to a party on a non-confidential basis at the time of disclosure to such party by the other party, (ii) has become publicly known and made generally available through no wrongful act the Party receiving such information, or (iii) has been rightfully received by a Party from a third party (not including Contractor or the Customer) who is authorized to make such a disclosure. Each Party acknowledges and agrees that all of such Confidential Information of the other Party shall be the other Party's proprietary property and shall be delivered by such Party to the other Party with no copies retained by the delivering Party, at any time promptly upon request to do so.

9. **Project Managers and Personnel.** The Customer and Consultant may each assign a Project Manager for managing the implementation of the Project. The Project Mangers shall be responsible for: (i) managing the day-to-day activities under this Agreement, (ii) serving as liaisons between the Parties, (iii) assigning and scheduling the appropriate personnel to perform all of the required services under this agreement, and (iv) authorizing and executing any and all Work Authorization Agreements and Change Orders. The Customer hereby acknowledges and agrees that the Customer's Project Manager shall have the proper authority and power to execute and perform the duties and responsibilities set forth in this Section. Consultant hereby acknowledges and agrees that the Consultant's Project Manager shall have the proper authority and power to execute and perform the duties and responsibilities set forth in this Section.

The Consultant's Project Manager and other personnel assigned to any Project (whether sub-contractors or employees of Consultant) shall remain on the Project for its entire duration, unless such Project Manager or personnel (1) voluntarily resigns from Consultant; (2) is dismissed by Consultant; (3) is unable to work due to his or her death or disability, (4) is no longer needed for services under this Agreement and the individual's continuance would add to expenses paid by Customer, or (5) Customer notifies Consultant of its dissatisfaction with an individual's performance and the Customer and Consultant agree that the individual will cease performance under this Agreement. In the event Consultant must replace personnel to the Project, said replacement shall be equivalent in skill level to those whom they replace and shall be subject to the approval of the Customer, which approval shall not be unreasonably withheld.

10 **Marketing.** The Customer hereby grants Consultant the right to use the name, logos, trademarks, and service marks of the Customer in its marketing materials or other oral, electronic, or written promotions, which shall be limited to naming the

4

Customer as a client of Consultant and a brief scope of the services provided. Any use of Customer's name, logo, trademark or service marks beyond that specified above must be approved in writing by Customer prior to such use.

11. **Independent Contractor.** Consultant and all sub-contractors used in the course of any client engagements are, and throughout the term of this Agreement shall be, independent contractors, and not an employee, partner or agent, of the Customer. Consultant shall not be entitled to nor receive any benefit normally provided to Customer's employees such as, but not limited to, vacation payment, retirement, health care or sick pay. Customer shall not be responsible for withholding income or other taxes from the payments made to the Consultant by it. Consultant shall be solely responsible for filing all returns and paying any income, social security, or other tax levied upon or determined to be due with respect to the payments made to Consultant by the Customer pursuant to this Agreement. Any subcontractor or personnel used by Consultant to perform the Services shall be qualified to perform their assigned duties. Consultant shall control, direct, and supervise its subcontractors and personnel performing pursuant to this Agreement and shall ensure that they comply with the terms and conditions of this Agreement to the extent they would apply to Consultant if Consultant were performing the same functions or activities. Consultant shall assume liability to Client for acts or omissions of such subcontractor or personnel. Consultant shall be solely responsible for the payment of compensation, sick leave, vacations and all employment-related taxes and tax withholding and all other payments required to be paid to or for personnel provided by Consultant. Nothing in this Agreement shall be deemed to constitute a partnership, joint venture, or fiduciary relationship between Customer and Consultant, nor shall anything in this Agreement be deemed to create an agency relationship between Consultant and Customer. Neither Consultant nor Customer shall be or become liable or bound by any representation, act or omission whatsoever of the other.

13. **Agreement Not to Solicit Employees.** In consideration of this Agreement and for other good and valuable consideration, during the term of this Agreement and for a period of one (1) year from the date of expiration or termination of this Agreement (at any time for any reason), neither Party shall target any of the other Party's employees or sub-contactors (employed or engaged at any time during the term of this Agreement) for the purpose of hiring such individuals or attempt, directly or indirectly, to solicit, entice, persuade or induce any employee or sub-contactor of the other Party to terminate his or her employment or engagement by the other party or to become employed or engaged by any other person, firm or corporation, or approach any such employee or sub-contractor for any of the foregoing purposes or authorize and assist in the taking of any such action by any third party. This section shall not apply (i) to activities taken pursuant to normal hiring practices which are not designed to target such employees, or (ii) in the event an employee applies for employment by Customer.

**14. LIMITED WARRANTY; DISCLAIMER OF OTHER WARRANTIES.** CONSULTANT WARRANTS THAT (i) ALL SERVICES SHALL BE PERFORMED IN A PROFESSIONAL MANNER AND THAT NEITHER THE INTELLECTUAL PROPERTY NOR ITS DEVELOPMENT IS OR WILL BE INCONSISTENT WITH

ANY OBLIGATION OF CONSULTANT TO OTHERS, (ii) ALL WORK ON THE INTELLECTUAL PROPERTY SHALL BE CONSULTANT'S ORIGINAL WORK AND NONE OF THE SERVICES OR ANY DEVELOPMENT, USE, PRODUCTION, DISTRIBUTION OR EXPLOITATION THEREOF WILL INFRINGE, MISAPPROPRIATE OR VIOLATE ANY PROPERTY OR OTHER RIGHTS OF ANY PERSON OR ENTITY, AND (iii) CONSULTANT HAS THE FULL RIGHT TO TRANSFER OWNERSHIP OF THE INTELLECTUAL PROPERTY AND TO INCORPORATED PROGRAMS TO CUSTOMER. CONSULTANT FURTHER WRRANTS AND REPRESENTS THAT THE INTELLECTUAL PROPERTY WILL PERFORM IN ACCORDANCE WITH ITS DOCUMENTATION. CONSULTANT'S SOLE OBLIGATION FOR BREACH OF THE FOREGOING WARRANTY SHALL BE LIMITED TO EITHER USING REASONABLE COMMERCIAL EFFORTS TO CORRECT SUCH NONCONFORMING SERVICES OR, AT CONSULTANT'S OPTION, REFUNDING THE PRICE FOR THE PROJECT IN WHICH SUCH WARRANTY IS BREACHED. EXCEPT FOR THE FOREGOING, CONSULTANT DOES NOT WARRANT AND CONSULTANT'S WARRANTIES IN THIS AGREEMENT EXPRESSLY DO NOT PROVIDE OR ASSURE THAT USE OF THE COMPUTER PROGRAMS ON WHICH CONSULTANT PROVIDES SERVICES SHALL MEET THE CUSTOMER'S REQUIREMENTS OR SHALL OPERATE WITHOUT INTERRUPTION OR ERROR. EXCEPT AS PROVIDED ABOVE, AND EXCLUDING PRODUCTS, CONTENT OR SOFTWARE DEVELOPED BY CONSULTANT'S SUBCONTRACTORS, CONSULTANT MAKES NO WARRANTY OF ANY KIND, WHETHER EXPRESS OR IMPLIED, WITH REGARD TO ANY THIRD PARTY PRODUCTS, THIRD PARTY CONTENT OR ANY SOFTWARE, EQUIPMENT, HARDWARE OR OTHER PRODUCTS OBTAINED FROM THIRD PARTIES. THE FOREGOING WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES, AND CONSULTANT AND ITS SUPPLIERS DISCLAIM ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WHICH WARRANTIES ARE HEREBY EXPRESSLY EXCLUDED.

**15 LIMITATION OF LIABILTY.** IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER OR ANY THIRD PARTY, FOR ANY INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR EXEMPLARY DAMAGES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT OR THE PROJECT(S). OR FOR ANY CLAIM BY ANY THIRD PARTY. THE TOTAL LIABILITY FOR ALL DAMAGES, LOSSES, AND CAUSES OF ACTION (WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE) TO THE OTHER SHALL NOT EXCEED THE PRICE RECEIVED BY CONSULTANT PURSUANT TO THIS AGREEMENT THROUGH THE DATE THAT SUCH LIABILITY AROSE. THIS LIMITATION OF LIABILTY SHALL APPLY EVEN IF THE EXPRESS WARRANTIES SET FORTH ABOVE FAIL IN THEIR ESSENTIAL PURPOSE.

16. **Termination.** This Agreement may be terminated at any time by either Party, with or without cause (including for no cause), upon thirty (30) days' written notice to the other Party; provided that: (i) such termination shall not affect any Work Authorization Agreement or Change Order which is outstanding and has not been fully performed as of the effective date of the termination (and any such Work Authorization Agreement or Change Order shall continue to be governed by the terms and conditions of this Agreement until all Services contemplated therein have been fully performed and payments therefore made), and (ii) the provisions contained in Sections 11 through 25 (inclusive) of this Agreement shall survive termination of this Agreement, regardless of who causes the termination and under what circumstances. Notwithstanding the prior provision, if the Agreement is terminated by Customer for cause, including breach of a provision of the Agreement, then Customer may require in writing that Consultant immediately terminate further work under a Work Authorization Agreement. In such case, the parties will consider the amount of work completed by Consultant which Customer may freely transfer to a replacement vendor, as well as the ease and expense of replacing Consultant, when determining the extent to which any fees already paid by Customer shall be refunded to Customer. Neither Party hereto shall incur any liability whatsoever for any damage, loss or expense of any kind suffered or incurred by the other Party hereto arising from or incident to any termination of this Agreement by such Party which complies with the terms of this Agreement whether or not the terminating Party is aware of any such damage, loss or expenses.

17. **Indemnification.** The Consultant agrees to indemnify and hold harmless each company constituting the Customer, their officers, employees, agents and representatives for and against any and all liabilities, losses, damages, penalties, costs and expenses, including costs of defense and legal fees and expenses (collectively, "**Claims**"), which may be incurred or suffered by them to the extent that such Claims arise in connection with the Consultant's services provided pursuant to this Agreement (including, without limitation, services provided by individuals employed by the Consultant and/or individuals and companies engaged by the Consultant on a subcontractor basis to render services described in this Agreement or any Work Authorization or Change Order entered into in connection with this Agreement).

18. **Successors and Assigns.** This Agreement shall inure to the benefit of and be binding upon Consultant and the Customer and their respective heirs, personal representatives, successors and assigns. Whenever a reference is made in this Agreement to Consultant or the Customer, such reference shall be deemed to include a reference to the heirs, personal representatives, successors and assigns of same. This Agreement may not be assigned or transferred by either Party without the other Party's prior express written consent; provided, however, that either Party may assign or transfer this Agreement in connection with the sale or transfer of substantially all of such Party's business, assets or stock to another, and provided further that Consultant agrees that Customer may transfer all of its and their rights and obligations under this Agreement to a legal entity which they may jointly establish.

19. **Terminology.** All personal pronouns used in this Agreement whether used in the masculine, feminine or neuter gender, shall include all other genders, the singular shall include the plural, and vice versa. Titles of Sections herein are utilized for convenience only and neither limit nor amplify the provisions of this Agreement.

20. **Injunctive Relief; Severability.** The Parties acknowledge that it would be difficult to accurately assess damages that a party would suffer as a result of any violation of the provisions set forth in Sections 7 through 13 (inclusive) of this Agreement. Accordingly, each Party shall be entitled to seek injunctive relief against the other Party in the event that the other Party violates any such Provisions. Each party hereby consents to the initiation by the other Party in a court of competent jurisdiction of any action seeking to enjoin immediately any breach of such provisions. Notwithstanding the foregoing, a party's decision to seek injunctive relief shall not diminish the right of such Party to claim and recover damages in addition to injunctive relief. It is expressly understood and agreed that although the Parties consider the restrictive covenants contained in this Agreement to be reasonable, if a court determines that the time, territory, scope or any other restriction contained in this Agreement is an unenforceable restriction on the activities of either Party hereto, no such provision of this Agreement shall be rendered void but shall be deemed amended to apply as to such maximum time and territory and to such extent as such court may judicially determine or indicate to be reasonable. If any Section, subsection, or provision or the application of such Section, subsection, or provision of this Agreement is held invalid, illegal, or unenforceable, the remainder of this Agreement and the obligation of such Section, subsection, or provision to persons or circumstances other than those to which it is held invalid, illegal, or unenforceable shall not be affected by such invalidity, illegality, or unenforceability.

21. **Notice.** All notices and other communications provided for hereunder shall be in writing and shall be delivered: (i) personally, (ii) by overnight commercial courier, (iii) by postage paid certified mail, return receipt requested, (iv) by facsimile (which receipt is confirmed by the individual to whom it is addressed). Notice to the Customer shall be delivered to its address and/or contact information set forth below the Customer's signature on the signature page of this Agreement (or to such other address(es) as shall be specified by like notice).

22. **Governing Law; Venue; Attorneys' Fees.** This Agreement is executed in Delaware and shall be governed by the laws of the Commonwealth of Delaware without giving effect to the choice of law or conflict of law provisions thereof. The Parties hereto hereby consent to the personal jurisdiction and venue of the state and Federal courts located in the Commonwealth of Delaware in any legal action or proceeding brought to enforce, construe or interpret this Agreement. Each Party hereto irrevocably submits to the jurisdiction of each such court in each such action or proceeding. Notwithstanding the foregoing, in the event of a breach by a party of any of the restrictive covenants set forth in Sections 7 through 13 (inclusive) of this Agreement, the non-breaching Party may, at its option, elect to bring an action or proceeding in any venue or state in which the breaching Party is violating any such restrictive covenants. In the event of any litigation arising out of or relating to this Agreement or the breach, termination, validity,

or enforcement of this Agreement, the prevailing Party shall be entitled to recover all costs and reasonable attorneys' and paralegals' fees incurred in any investigation, trails, bankruptcies, appeals and collection efforts.

23. **Force Majeure.** Except with regard to payment obligations, either Party shall be excused from delays in performing or from failing to perform its obligations under this Agreement to the extent the delays or failures result from causes beyond the reasonable control of the Party, including, but not limited to: default of suppliers; failures or default of third party software, vendors, or products; acts of God or of the public enemy; U.S. or foreign governmental actions; acts of terrorism, strikes; communications, network/Internet connection, or utility interruption or failure; fire; flood; epidemic; and freight embargoes.

24. **Entire Agreement.** This Agreement and the Work Authorizations and Change Orders which may be executed in connection with this Agreement represent the final and entire agreement of the Parties with respect to the subject matter hereto and supersede any and all prior or contemporaneous written or oral agreements between the Parties with respect to such subject matter. Any amendment hereto, or modification of the terms hereof, shall not be effective unless and until it is in writing and signed by both Parties.

25. **Miscellaneous.** This Agreement shall not be construed more strictly against other Party regardless of which Party is responsible for its drafting. This Agreement shall not confer any rights or remedies upon any person other than the Parties hereto and their respective successors and permitted assigns. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original instrument, but all of which counterparts together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, this Agreement has been executed by the Parties as of the day and year written below.

DATE: _April 9_, 2008

**CUSTOMER:**

AAA Mid-Atlantic Inc.
By: _/s/ Diane Remy_
Diane Remy, Senior Vice President
Address: Wilmington, DE 19801
Contact: Scott Gamble
Email: sgamble@aaamidatlantic.com
Phone: 302-299-4202

**Alberta Motor Association Travel Agency, Ltd.**
By: _____
Michelle Chimko, Vice President and General Manager

or enforcement of this Agreement, the prevailing Party shall be entitled to recover all costs and reasonable attorneys' and paralegals' fees incurred in any investigation, trails, bankruptcies, appeals and collection efforts.

23. **Force Majeure.** Except with regard to payment obligations, either Party shall be excused from delays in performing or from failing to perform its obligations under this Agreement to the extent the delays or failures result from causes beyond the reasonable control of the Party, including, but not limited to: default of suppliers; failures or default of third party software, vendors, or products; acts of God or of the public enemy; U.S. or foreign governmental actions; acts of terrorism, strikes; communications, network/Internet connection, or utility interruption or failure; fire; flood; epidemic; and freight embargoes.

24. **Entire Agreement.** This Agreement and the Work Authorizations and Change Orders which may be executed in connection with this Agreement represent the final and entire agreement of the Parties with respect to the subject matter hereto and supersede any and all prior or contemporaneous written or oral agreements between the Parties with respect to such subject matter. Any amendment hereto, or modification of the terms hereof, shall not be effective unless and until it is in writing and signed by both Parties.

25. **Miscellaneous.** This Agreement shall not be construed more strictly against other Party regardless of which Party is responsible for its drafting. This Agreement shall not confer any rights or remedies upon any person other than the Parties hereto and their respective successors and permitted assigns. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original instrument, but all of which counterparts together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, this Agreement has been executed by the Parties as of the day and year written below.

DATE: April 5, 2007, ~~2006~~

**CUSTOMER:**

    **AAA Mid-Atlantic Inc.**
    By: _____
    Diane Remy, Senior Vice President
    Address:    Wilmington, DE 19801
    Contact:    Scott Gamble
                   Email: sgamble@aaamidatlantic.com
                   Phone: 302-299-4202

    **Alberta Motor Association Travel Agency, Ltd.**
    By: _____
    Michelle Chimko, Vice President and General Manager

9

Address: Edmonton, Canada
Contact: Joel Ruff
Email: joel.ruff@ama.ab.ca
Phone: 780-430-5648

**CAA Travel (South Central Ontario) Inc.**
By: _____
Lynda Breakey, Vice President, Travel and Retail Services
Address: Thornhill, Ontario
Contact: Michele Radford
Email: mtr@caasco.ca
Phone: 905-415-3500 ext 3151

**Ohio Auto Club**
By: _____
Deborah Sproul, Executive Vice President
Address: Columbus, Ohio
Contact: Trisha Jackson
Email: tjackson@aaaohio.com
Phone: 614-431-7862

**CONSULTANT:**

_____

By: _____
Les Ottolenghi

Address: _____ Atlanta, GA
Email: _____ ; Phone: _____

10

(
Address:    Edmonton, Canada
Contact:    Joel Ruff
            Email: joel.ruff@ama.ab.ca
            Phone: 780-430-5648

**CAA Travel (South Central Ontario) Inc.**
By: _____
Lynda Breakey, Vice President, Travel and Retail Services
Address:    Thornhill, Ontario
Contact:    Michele Radford
            Email: mtr@caasco.ca
            Phone: 905-415-3500 ext 3151

**Ohio Auto Club**
By: _____/s/ Thomas W Kyle_____
~~Deborah Sproul, Executive Vice President~~   Thomas W Kyle COO + Treasurer
Address:    Columbus, Ohio
Contact:    Trisha Jackson
            Email: tjackson@aaaohio.com
            Phone: 614-431-7862


(
**CONSULTANT:**

_____

By: _____
Les Ottolenghi

Address: _____ Atlanta, GA
Email: _____ ; Phone: _____

(

10

    Address:    Edmonton, Canada
    Contact:    Joel Ruff
                   Email: joel.ruff@ama.ab.ca
                   Phone: 780-430-5648

**CAA Travel (South Central Ontario) Inc.**
By: _____
Lynda Breakey, Vice President, Travel and Retail Services
    Address:    Thornhill, Ontario
    Contact:    Michele Radford
                   Email: mtr@caasco.ca
                 Phone: 905-415-3500 ext 3151

**Ohio Auto Club**
By: _____
Deborah Sproul, Executive Vice President
    Address:    Columbus, Ohio
    Contact:    Trisha Jackson
                   Email: tjackson@aaaohio.com
                 Phone: 614-431-7862

**CONSULTANT:**

By: *[signature]*
Les Ottolenghi
Address: 1077 HIGHPORT DR. Atlanta, GA
Email: _____ ; Phone: 404 513 8161
LESOADCLLC, IHFD