# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRAVEL SYNDICATION TECHNOLOGY, LLC, | ) ) ) |
| Plaintiff/ Counterclaim Defendant, | ) ) ) ) |
| v. | ) ) Civil Action No. 11-553-RGA-SRF |
| FUZEBOX, LLC and DIGITAL COMMERCE, LLC, | ) ) ) ) |
| Defendants/ Counterclaim Plaintiffs. | ) ) ) |

## MEMORANDUM ORDER

**I.    INTRODUCTION**

Presently before the Court in this diversity action is the motion of defendants and counterclaim plaintiffs Fuzebox, LLC and Digital Commerce, LLC ("Digital") (together, "Fuzebox") for leave to add AAA Mid-Atlantic, Inc. ("Mid-Atlantic") as a counterclaim defendant and to add four counterclaims. (D.I. 24) Plaintiff and counterclaim defendant Travel Syndication Technology, LLC ("TST") opposes the motion to add Mid-Atlantic and for leave to amend. (D.I. 29) For the reasons set forth below, the Court will grant the motion.

**II.    BACKGROUND[1]**

**A.    Procedural History**

---

[1] In determining whether to grant leave to amend under Federal Rule of Civil Procedure 15, the Court must apply the standard set forth in Federal Rule of Civil Procedure 12(b)(6) to determine whether amendment of the pleading would be futile. *See Winer Family Trust v. Queen*, 503 F.3d 319, 330-31 (3d Cir. 2007). When applying Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As such, the Court primarily relies on the facts set forth in Fuzebox's amended counterclaims for purposes of this background section.

The present matter is a diversity action arising from the termination of a certain Professional Services Agreement ("PSA") between TST and Fuzebox. On May 27, 2011, TST filed a verified complaint for injunctive and monetary relief in the Court of Chancery of the State of Delaware, seeking a declaratory judgment that its termination of the PSA was proper. (D.I. 1, Ex. A Part 1) Fuzebox filed a notice of removal to this Court on June 21, 2011. (D.I. 1) On June 28, 2011, Fuzebox answered the complaint, alleging eleven counterclaims against TST for breach of the PSA and related agreements, promissory estoppel, tortious interference with business relations, tortious interference with contractual relations, breach of the implied covenant of good faith and fair dealing, and attorneys' fees and costs. (D.I. 3) TST filed its answer to Fuzebox's counterclaims (D.I. 6) and an amended complaint for injunctive and monetary relief (D.I. 7) on July 19, 2011. Fuzebox filed an answer to TST's amended complaint on August 2, 2011. (D.I. 9)

The Court entered a scheduling order on October 19, 2011, setting February 7, 2012 as the deadline for joining additional parties and filing amended pleadings. The parties exchanged initial disclosures on October 28, 2011 and engaged in limited, phased discovery in preparation for the mediation conference, which was held on April 9, 2012. (D.I. 15, 16) Fuzebox filed the instant motion on February 7, 2012, seeking leave to add Mid-Atlantic as a counterclaim defendant and to include four additional counterclaims against Mid-Atlantic for tortious interference with business and contractual relations, misappropriation, and civil conspiracy.[2]

---

[2] The proposed amended counterclaim seeks to add Mid-Atlantic to four of the original eleven counterclaims against TST as follows: "Counterclaim VI Tortious Interference with Business Relations; Counterclaim VII Tortious Interference with Contractual Relations; Counterclaim VIII Tortious Interference with Business Relations with Valtech; and Counterclaim IX Tortoius Interference with Contractual Relations with Valtech." (D.I. 24, Ex. A at ¶¶ 137 - 166)

(D.I. 24)

B.   **The Professional Services Agreement**

In August of 2006, certain charter member organizations of the American Automobile Association (collectively, the "AAA Charter Entities"), including Mid-Atlantic, met with Fuzebox regarding the possibility of entering into a consulting engagement for purposes of researching the technical feasibility of developing a web application for travel agents and customer members known as a Syndication Hub Project ("SHP"). (D.I. 24, Ex. 1 at ¶ 9)  In April of 2007, the AAA Charter Entities entered into the PSA with Digital for the development of the SHP. (*Id.* at ¶ 10)  Digital subsequently assigned its rights and obligations under the PSA to Fuzebox, and a novation substituted TST for the AAA Charter Entities. (*Id.* at ¶¶ 20, 28)  At the time of the alleged contractual breaches and tortious conduct, the parties to the PSA were TST and Fuzebox. (*Id.* at ¶ 82)

The PSA contained a provision authorizing the termination of Fuzebox either "for convenience" or "for cause," upon thirty days' written notice, so long as the termination did not affect any outstanding work authorization agreement or change order. (*Id.* at ¶ 12)  The PSA also included a non-solicitation provision prohibiting a party to the PSA from targeting the other party's employees or subcontractors for employment for a period of one year from the date of termination of the PSA. (*Id.* at ¶ 14)

Pursuant to the terms of the PSA, all materials created by Fuzebox under the PSA were to

---

In addition, new counterclaims are proposed as follows: "XII Tortious Interference with Business Relations with TST; XIII Tortious Interference with Contractual Relations with TST; XIV Misappropriation of Fuzebox's Industrial Property; and XV Civil Conspiracy." (D.I. 24, Ex. A at ¶¶ 177 - 201)

be the exclusive property of TST. (*Id.* at ¶ 15) On May 16, 2011, TST terminated the PSA. (*Id.* at ¶ 82) Thus, the thirty day effective date of termination is June 16, 2011.

        **C.**      **Basis for Joinder and Counterclaims Against Mid-Atlantic**

By way of its motion, Fuzebox seeks to add Mid-Atlantic as a counterclaim defendant on four of eleven existing counterclaims, and to assert four additional counterclaims against it, based on information uncovered during the discovery process. In an action initiated by Fuzebox against its former Chief Technology Officer, Jayant Chaudhary ("Chaudhary"), in the Superior Court of Forsyth County, Georgia (the "Georgia Action"), discovery obtained by Fuzebox revealed that Mid-Atlantic, which controlled TST,[3] contracted with consilium1, a national information technology consulting services company, in March of 2011 for services relating to the development of software applications for TST. (D.I. 25 at 4; D.I. 24, Ex. 1 at ¶¶ 46, 67) The contract provided that consilium1 would perform services and work from Fuzebox's offices in Atlanta, Georgia. (*Id.* at ¶ 68) TST and consilium1 also entered into a contract in April of 2011, pursuant to which consilium1 agreed to provide services relating to the development of the SHP for TST. (*Id.* at ¶ 76)

The documents discovered in the Georgia Action also included emails indicating that Chaudhary participated in TST and Mid-Atlantic's interviewing and hiring of Fuzebox employees. (*Id.* at ¶¶ 70, 83) Following the termination of the PSA, TST hired over fifty Fuzebox employees and contracted with Chaudhary to complete the product. (*Id.* at ¶¶ 78, 84, 85, 89)

---

      [3]Fuzebox avers that Mid-Atlantic acquired the largest ownership interest in TST upon acquisition of South Central Ontario's interest following that Charter Entity's resignation from the TST SHP in July of 2010. (D.I. 24, Ex. 1 at ¶ 46)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that, on a motion to amend a pleading, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although the grant or denial of a motion for leave to amend a pleading is ultimately within the discretion of the District Court, the Third Circuit has adopted a liberal approach to the amendment of pleadings "to ensure that a particular claim will be decided on the merits rather than on technicalities." *Abbott Labs. v. Johnson & Johnson, Inc.*, 524 F. Supp. 2d 553, 557 (D. Del. 2007) (quoting *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) (internal quotation marks omitted)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend should generally be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182; *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In the present case, only futility of amendment is disputed.

The standard for assessing futility of amendment under Fed. R. Civ. P. 15(a) is the same standard of legal sufficiency applicable under Fed. R. Civ. P. 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Specifically, the amended pleading must fail to state a claim upon which relief could be granted even after the district court "tak[es] all pleaded allegations as true and view[s] them in a light most favorable to the plaintiff." *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint

must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 663. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of the plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). The court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

Following the Supreme Court's decision in *Iqbal*, district courts have conducted a two-part analysis in determining the sufficiency of the claims. First, the court must separate the factual and legal elements of the claim, accepting the complaint's well-pleaded facts as true and disregarding the legal conclusions. *Iqbal*, 556 U.S. at 663. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664. Second, the court must determine whether the facts alleged in the complaint state a plausible claim by conducting a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'

- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**IV. DISCUSSION**

The sole basis upon which TST opposes Fuzebox's Motion for Leave to Amend is that the proposed amendments would be "futile." (D.I. 29 at 6) Therefore, it is not necessary for the Court to assess any other factors under a Rule 15(a)(2) analysis to determine whether the motion should be denied. In reliance upon the futility argument, TST contends that "there would be no claims against Mid-Atlantic."[4] (*Id.*)

**A. Joinder of Mid-Atlantic as Counterclaim Defendant**

TST has not countered Fuzebox's argument that the requirements of Federal Rule of Civil Procedure 20 for joinder of Mid-Atlantic have been satisfied.[5] Rule 20 provides that parties may be joined as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

In the present matter, Fuzebox seeks to add Mid-Atlantic as a counterclaim defendant because of recently discovered evidence supporting the theory that Mid-Atlantic worked together with TST in eliminating Fuzebox from the SHP and poaching Fuzebox employees. In this context, Mid-Atlantic and TST would be jointly and severally liable for the alleged conduct arising out of the same transaction or occurrence, namely, the termination of the PSA. Moreover,

---

[4] In its opposition to the Motion, TST has not addressed Fuzebox's arguments in support of joinder of a party under Fed. R. Civ. P. 20, and joinder of claims under Fed. R. Civ. P. 13 and 18.

[5] Fuzebox avers in its Reply Brief that the joinder should be permitted, as unopposed, as to the existing counts VI through IX of its counterclaim. (D.I. 30 at 1)

Fuzebox has alleged causes of action for tortious interference against both TST and Mid-Atlantic, thereby meeting the second prong of Rule 20 with respect to the existence of a common question of law or fact. In light of the foregoing, the Court concludes that joinder of Mid-Atlantic is proper.

### B.  Joinder of Four Counterclaims

A party asserting a counterclaim "may join, as independent or alternative claims, as many claims as it has against the opposing party." Fed. R. Civ. P. 18(a). Federal Rule of Civil Procedure 13, which governs the pleading requirements for compulsory and permissive counterclaims, provides that a pleading must include any counterclaim that "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). A claim will be deemed part of the same transaction or occurrence if it bears a logical relationship to the subject matter of the pleading. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 836 n.9 (3d Cir. 2011). "Such a logical relationship exists where separate trials on each of the claims would involve a substantial duplication of effort and time by the parties and the courts." *Id.* (internal quotation marks omitted). The term "transaction or occurrence" is construed broadly to further the policy objective of Rule 13(a) for promoting judicial economy. *Transam. Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002).

With respect to permissive counterclaims, Rule 13(b) provides that "[a] pleading may state as a counterclaim against an opposing party any claim that is not compulsory." Fed. R. Civ. P. 13(b). Unlike compulsory counterclaims, permissive counterclaims need not arise out of the

occurrence that is the subject matter of the opposing party's claim. *Spectator Mgmt. Group v. Brown*, 131 F.3d 120, 122 n.4 (3d Cir. 1997).

The Court concludes that Fuzebox's additional counterclaims meet the requirements of Rule 13(a). As previously discussed, the additional counterclaims against Mid-Atlantic arise out of the circumstances surrounding the termination of the PSA. *See* § IV.A, *supra*. Moreover, the addition of the counterclaims does not require adding a party over whom the Court lacks jurisdiction. As a Delaware corporation with its principal place of business in Delaware, Mid-Atlantic is subject to the Court's jurisdiction. (D.I. 24, Ex. 1 at ¶¶ 3, 4, 6) The Court further notes that TST does not dispute the propriety of joining the counterclaims pursuant to Rule 13. Rather, TST contests the viability of the counterclaims under Rules 8 and 15. For the reasons that follow, the Court concludes that inclusion of the counterclaims against Mid-Atlantic would not be futile.

### 1. Tortious Interference

#### (a) Affiliate privilege

TST alleges that Fuzebox's counterclaims for tortious interference are futile because the affiliate privilege shields Mid-Atlantic from such claims under Delaware law. The affiliate privilege "shields companies affiliated through common ownership from tortious interference with contract claims when the companies act in furtherance of their shared legitimate business interests." *James Cable, LLC v. Millenium Digital Media Sys., L.L.C.*, C.A. No. 3637-VCL, 2009 WL 1638634, at *4 (Del. Ch. June 11, 2009). The affiliate privilege applies unless the plaintiff adequately pleads that the defendant "was motivated by some malicious or other bad faith purpose." *Id.* (internal quotations omitted).

The Court concludes that the affiliate privilege does not bar amendment of the counterclaims in the present matter because Fuzebox has sufficiently pled facts demonstrating that Mid-Atlantic acted maliciously or in bad faith. The counterclaims for tortious interference specifically allege that "[s]uch acts have been done with malice and bad faith, without privilege, and with the intent to destroy Fuzebox's business." (D.I. 24, Ex. 1 at ¶¶ 180, 187) In support of these legal conclusions, the counterclaims allege that, unknown to Fuzebox, Mid-Atlantic entered into an agreement with consilium1 for services relating to the SHP, consilium1 began work on the SHP prior to Fuzebox's termination, and a consilium1 contractor was offered access to Fuzebox's facilities without Fuzebox's consent or knowledge. (*Id.* at ¶¶ 67-69) Accepting these facts as true, the Court may reasonably infer that Mid-Atlantic entered into the contract with consilium1 with the intent to undermine Fuzebox's obligations under the PSA. It is alleged that Mid-Atlantic gained access to Fuzebox's facilities and development team, through placement of individuals seemingly affiliated with Mid-Atlantic, who were selected to ostensibly work with Fuzebox on the development of the SHP. (*Id.* at ¶¶ 67-70) However, Fuzebox contends that the placement of these individuals was a cover for Mid-Atlantic's intent to raid and hire away Fuzebox's employees, contractors and subcontractors, thus impairing Fuzebox's business relationship with TST. (*Id.* at ¶¶ 89-71)

In light of these facts, TST's contention that Mid-Atlantic and TST had shared, legitimate economic interests is not sufficient to defeat Fuzebox's claims of tortious interference. *See Global Recycling Solutions, LLC v. Greenstar N.J., LLC*, C.A. No. 09-976-LPS, 2011 WL 4501165, at *10 (D. Del. Sept. 28, 2011) (holding that bad faith was sufficiently pled where facts demonstrated that defendant's control of the company was not aimed at the shared profitability of

company and affiliate, but rather was designed to benefit defendant at the company's expense). Fuzebox's allegations of malice and bad faith, accepted as true, are therefore sufficient to overcome the affiliate privilege at this stage of the proceedings.

### (b)     Sufficiency of pleadings under *Twombly* and *Iqbal*

Having concluded that Fuzebox's counterclaims for tortious interference are not barred by the affiliate privilege, the Court next addresses the sufficiency of Fuzebox's counterclaims for tortious interference under the standards set forth in the Supreme Court's decisions in *Twombly* and *Iqbal*. For the following reasons, the Court concludes that Fuzebox's counterclaims for tortious interference withstand the futility analysis.

To plead a claim for tortious interference with contractual relations under Delaware law, a plaintiff must allege: (1) a valid contract, (2) about which the defendant knew, (3) an intentional act that is a significant factor in the breach of the contract, (4) done without justification, (5) that causes injury to the plaintiff.  *Colbert v. Goodville Mut. Cas. Co.*, C.A. No. K10C-01-001 JTV, 2011 WL 441363, at *1 (Del. Super. Jan. 31, 2011).  In this case, Fuzebox has pled the existence of the PSA and Mid-Atlantic's knowledge of that agreement.  (D.I. 24, Ex. 1 at ¶¶ 32, 46, 186)  According to Fuzebox, TST breached the PSA by terminating it despite the outstanding work that remained to be performed by Fuzebox.  (*Id.* at ¶¶ 12, 92, 102-06)  The facts alleged in support of the counterclaims indicate that Mid-Atlantic participated in this breach by contracting with consilium1 to assume Fuzebox's role in working on the SHP.  (*Id.* at ¶ 67)  Accepting the allegations of the counterclaims as true and viewing them in the light most favorable to Fuzebox, the counterclaims further indicate that Fuzebox performed all material obligations required of it under the PSA, and as a result, termination of the PSA without cause

11

was not justified.  (*Id.* at ¶¶ 82, 105)  As a result of Mid-Atlantic's conduct, Fuzebox suffered injuries relating to the termination of the PSA and the loss of employees.  (*Id.* at ¶¶ 89, 91-92)

TST contends that a claim for tortious interference with contractual relations which is based on the termination of an at-will contract cannot stand.  However, TST fails to recognize that "[t]he focus of a claim for tortious interference with contractual relations is upon the *defendant's* wrongful inducement of a contract termination, not upon whether the termination itself was legally justified."  *ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749, 750-52 (Del. 2010) (citing *Neyer, Tiseo & Hindo, Ltd. v. Russell*, C.A. No. 92-2983, 1993 WL 334951 (E.D. Pa. Aug. 26, 1993)).  If a defendant utilizes "wrongful means" to induce a third party to terminate a contract, the claim will survive.  *Id.*  In the present matter, Fuzebox alleges that Mid-Atlantic and TST entered into contracts with consilium1 to terminate Fuzebox's involvement in the SHP without Fuzebox's knowledge, and that they actively solicited Fuzebox employees.  These facts are similar to the situation in *Neyer, Tiseo & Hindo, Ltd. v. Russell*, in which the district court held that conduct causing the plaintiff to lawfully terminate the at-will contract, including holding secret meetings and recruiting the plaintiff's employees, was sufficient to hold the defendants liable for tortious interference.  *See Neyer, Tiseo & Hindo, Ltd. v. Russell*, C.A. No. 92-2983, 1993 WL 334951, at *8 (E.D. Pa. Aug. 26, 1993).

Fuzebox's counterclaim for tortious interference with business relations likewise states a plausible claim for relief on its face.  To plead a claim for tortious interference with business relations under Delaware law, a plaintiff must allege: (1) the reasonable probability of a business opportunity, (2) the intentional interference by defendant with that opportunity, (3) proximate cause, and (4) damages.  *Malpiede v. Towson*, 780 A.2d 1075, 1099 (Del. 2001).  The factual

allegations set forth in support of the counterclaim for tortious interference with contractual relations apply equally to the instant counterclaim. Specifically, the counterclaims allege that Fuzebox planned to complete the SHP until Mid-Atlantic and TST contracted with consilium1 to provide services relating to the SHP and terminated the PSA with Fuzebox. (D.I. 24, Ex. 1 at ¶¶ 12, 67, 92, 102-06) As a result of this conduct, Mid-Atlantic caused Fuzebox to suffer injuries relating to the termination of the PSA and the loss of employees. (*Id.* at ¶¶ 89, 91-92)

In light of the foregoing, viewing the facts in the manner most favorable to Fuzebox and accepting the facts alleged in the counterclaims as true, the Court concludes that the counterclaims for tortious interference are facially plausible and survive the futility analysis.

### 2. Civil Conspiracy

TST asserts the affiliate privilege in opposition to Fuzebox's proposed amended counterclaim to add a claim of civil conspiracy. (D.I. 29 at 14-15)

"[T]o state a claim for civil conspiracy, a plaintiff must plead facts supporting (1) the existence of a confederation or combination of two or more persons; (2) that an unlawful act was done in furtherance of the conspiracy; and (3) that the conspirators caused actual damage to the plaintiff." *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1036 (Del. Ch. 2006). According to TST, Fuzebox fails to establish that Mid-Atlantic and TST committed an unlawful act in furtherance of the conspiracy because Fuzebox's counterclaim fails to plead facts sufficient to overcome the affiliate privilege. (D.I. 29 at 14)

Having determined that Fuzebox's counterclaims for tortious interference state a claim upon which relief can be granted, the Court concludes that Fuzebox's derivative counterclaim for civil conspiracy does not automatically fail as a result of its dependence on those counterclaims.

Since facially plausible claims for tortious interference exist, the derivative civil conspiracy counterclaim survives this challenge at the pleading stage. Moreover, the affiliate privilege does not bar Fuzebox's civil conspiracy claim because Fuzebox made a sufficient showing of malice by Mid-Atlantic. *See* § IV.B.1(a), *supra*.

### 3. Misappropriation of Fuzebox's Industrial Property

The Court concludes that Fuzebox's counterclaim for misappropriation of the Industrial Property is facially plausible. Trade secret misappropriation is the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means, or alternatively, the disclosure or use of a trade secret of another without express or implied consent. 6 *Del. C.* § 2001(2). The counterclaim alleges that TST and Mid-Atlantic misappropriated the Industrial Property by poaching Fuzebox's software development team, including Chaudhary. (D.I. 24, Ex. 1 at ¶ 193) In support of this allegation, the counterclaims contain facts stating that Fuzebox's employees possessed skills and know-how to develop, acquire, integrate and refine software development tools, work protocols, organization structure and other business methods that were not generally known or available to the public. (*Id.* at ¶¶ 91, 192)

Although TST cites authority suggesting that hiring a corporate officer is not sufficient to state a claim for misappropriation of trade secrets, *see Medafor, Inc. v. Starch Med. Inc.*, C.A. No. 09-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009), the facts in the present case go well beyond the hiring of a single officer. Specifically, Fuzebox alleges that TST hired over fifty Fuzebox employees, contractors, and subcontractors, encouraging them to apply for future job postings relating to the SHP. (D.I. 24, Ex. 1 at ¶ 89) The counterclaims expressly

14

state that the knowledge and skills possessed by these employees enable them to create processes and work systems that are not generally known or available to the public.  (*Id.* at ¶ 192)  Viewing the facts in the light most favorable to Fuzebox, the Court concludes that the misappropriation counterclaim sufficiently states a plausible claim for relief.  *See Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 897 (Del. 2002) (holding that, even if the basic components of a program were well known, the program may still be protected as a trade secret if it is a unique combination of components).

## V.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Fuzebox's motion for leave to add Mid-Atlantic as a counterclaim defendant and to add four counterclaims is GRANTED.

Dated: May 25, 2012                                            /s/ Sherry R. Fallon  
                                                                                UNITED STATES MAGISTRATE JUDGE